COMMONWEALTH vs. LAURENTINO ALVARADO
(and three companion cases[1]).

Middlesex. February 9, 1995. - June 14, 1995.

Present: LIACOS, C.J., ABRAMS, LYNCH, & GREANEY, JJ.

*Controlled Substances. Constitutional Law*, Search and seizure, Probable
cause. *Search and Seizure*, Threshold police inquiry, Arrest, Probable
cause, Automobile, Inventory. *Probable Cause. Arrest.*

The combination of circumstances following a police officer's lawful stop of
an automobile, whereupon the officer observed the passenger stuffing
something the officer believed to be a glassine bag into the front of his
pants, which in turn justified the officer's conducting a threshold in-
quiry, gave rise to probable cause to arrest the passenger; the pat
search of the individual thereafter was incident to the arrest and the
controlled substances found were lawfully seized. [547-551]

In the circumstances of a police officer's lawful arrest of the passenger of
an automobile for possession of a controlled substance, there was proba-
ble cause also to arrest the driver of the vehicle for joint or constructive
possession of the cocaine found on the person of the passenger. [551-
552]

The search of an automobile that State police had towed to police barracks
after arresting the driver and passenger could not be justified as an
inventory search or a search incident to arrest, nor did the search meet
the requirements of the "automobile exception" to the warrant require-
ment: the contraband seized from the automobile was correctly sup-
pressed. [552-555]

INDICTMENTS found and returned in the Superior Court
Department on February 3, 1993.

Pretrial motions to suppress evidence were heard by
*Robert H. Bohn, J.*

---

[1] Two against Manuel Londono and one against Alvarado.

Applications for interlocutory appeals were allowed by *Wilkins*, J., and *Greaney*, J., in the Supreme Judicial Court for the county of Suffolk, and the appeals were consolidated.

*William Bloomer*, Assistant District Attorney, for the Commonwealth.

*Andrew L. Mandell* for Laurentino Alvarado.

*Caroline J. Mailhot*, for Manuel Londono, was present but did not argue.

LIACOS, C.J. The defendants, Laurentino Alvarado and Manuel Londono, were indicted on charges of trafficking over 200 grams of cocaine and conspiring to traffic in cocaine. The defendants each filed motions to suppress the cocaine seized during two separate warrantless searches. The motions were denied with respect to twenty-eight grams of cocaine seized during a search of Londono's person,[2] but allowed with respect to the cocaine seized during a search of Londono's automobile. The Commonwealth and the defendants each filed an application for interlocutory appeal which were allowed by a single justice of this court.[3] The appeals have been consolidated.

---

[2] Alvarado has standing to challenge the arrest of Londono because Alvarado was charged with constructive possession of the cocaine seized from Londono's person at the time of his arrest. *Commonwealth* v. *Santaliz*, 413 Mass. 238, 240 n.5 (1992). *Commonwealth* v. *Amendola*, 406 Mass. 592, 596-601 (1990).

[3] The defendants claim that the single justice erred in accepting the Commonwealth's application for interlocutory review under G. L. c. 278, § 28E (1992 ed.), and Mass. R. Crim. P. 15 (b) (2), as amended, 397 Mass. 1226 (1986), because the application was not filed within the "reasonable time" required by Mass. R. Crim. P. 15 (b) (3), 378 Mass. 882 (1979).

The motion judge's initial order suppressing the evidence was filed on January 18, 1994. Thereafter, the Commonwealth filed a notice of appeal under Mass. R. Crim. P. 15 (b) (2) on January 24, 1994. The Commonwealth filed a motion for reconsideration of the motion to suppress on the same day. The motion for reconsideration was denied on February 15, 1994. On March 1, 1994, the Commonwealth filed a notice of appeal under rule 15 (b) (2) from the denial of its motion for reconsideration. The Commonwealth filed its application for interlocutory appeal with a single justice of this court on April 6, 1994, pursuant to an order of a Superior Court judge. The defendants claim that the filing of the application for interlocutory review was seventy-eight days after the original order on the

The defendants argue that the judge erred in not suppressing the cocaine found on Londono's person because the arresting officer did not have probable cause to arrest Londono as required by the Fourth Amendment to the United States Constitution and art. 14 of the Declaration of Rights of the Massachusetts Constitution. The Commonwealth argues that the motion judge erred in suppressing the cocaine seized during the search of Londono's automobile because the search was permissible either as an inventory search, as a search incident to arrest, or under the "automobile exception" to the warrant requirement. We uphold the order of the judge.

We recognize that the judge's findings of fact are "binding in the absence of clear error." Also, we view with respect his conclusions of law which are based on those findings. *Commonwealth* v. *Bottari*, 395 Mass. 777, 780 (1985), quoting *Commonwealth* v. *Correia*, 381 Mass. 65, 76 (1980). However, as this is a matter of constitutional dimension, the judge's ultimate findings and rulings of law are open to reexamination by this court. *Commonwealth* v. *Bottari, supra.*

We recite the facts. On the evening of January 13, 1993, Trooper Peter C. Cummings of the Massachusetts State po-

---

motion to suppress and forty-one days after the motion for reconsideration was denied and, thus, the filing of the application was untimely.

The single justice denied the defendants' motions to dismiss the Commonwealth's appeal and allowed the Commonwealth's application and the applications of the defendants. He ordered the matters consolidated for appellate argument. We uphold the single justice "absent clear error of law or abuse of discretion," *Forte* v. *Commonwealth*, 418 Mass. 98, 99 (1994), quoting *Campiti* v. *Commonwealth*, 417 Mass. 454, 455 (1994). See *Commonwealth* v. *Nettis*, 418 Mass. 715, 717 (1994). In *Commonwealth* v. *Guaba*, 417 Mass. 746 (1994), where an application also was reported by a single justice to the full bench, the defendant made an argument similar to the one made by Alvarado and Londono. We acknowledged in *Guaba, supra* at 751, that, although Mass. R. A. P. 4 (b), as amended, 378 Mass. 928 (1979), setting forth a thirty-day deadline, applied to notices of appeal of suppression orders, the rule was unclear as to when the thirty-day period begins to run. Although the application for interlocutory review was filed a little over one month after the notice of appeal, that period of time is not "unreasonable." See *Commonwealth* v. *Lewin (No. 3)*, 408 Mass. 147, 150-151 (1990).

lice was on routine patrol in his marked cruiser. While driving southbound on Route 495 in the Lowell area, he observed a Buick automobile. Based on the peculiar manuverings of the automobile and the extremely slow speed at which it was traveling, Trooper Cummings signalled the driver to stop. After the automobile stopped, Trooper Cummings approached the driver's side of the Buick, where Alvarado was seated. Cummings instructed Alvarado to drive off the highway into a nearby rest area. While speaking to Alvarado, Cummings shone his flashlight into the interior of the Buick. Cummings testified that the passenger, Londono, was grasping an object in his closed fist and was placing that object down the front of his pants. Cummings repeated his instructions to Alvarado and then followed the Buick into the rest area.

At the hearing on the motion to suppress, Cummings described what he saw in Londono's hand as a clear plastic material which he believed to be a glassine bag. Based on his knowledge and experience as a police officer with extensive narcotics training, Cummings was aware that glassine bags are commonly used to store controlled substances.

Once in the rest area, Cummings approached the passenger side of the Buick and instructed Londono to step out of the automobile. Londono complied. Cummings asked Londono what he had put in his pants. Londono denied having placed anything in his pants. Cummings then asked Alvarado for his license and registration. Alvarado handed Cummings a license which Cummings believed to be falsified but was later determined to be valid. The record shows that Alvarado also produced a valid registration which listed Londono as the owner of the Buick. Cummings testified that he asked Alvarado for his social security number and Alvarado replied that all he could remember of it was "944." Cummings was aware that social security numbers do not start with the number "9."

Cummings then turned his attention to Londono and asked him again what he had placed in his pants. Londono said, "Nothing," and, without any instruction from Cummings, as-

sumed a "spread eagle" position against the Buick. Cummings testified that Londono appeared very nervous. Cummings told Londono to relax and stand normally. After telling Londono that he had seen him place something in his pants, Cummings asked Londono where he was from. Londono replied, "Puerto Rico." Cummings, doubting him, said "Come on, where are you from?" and Londono replied Medellin, Colombia. Cummings was aware that Medellin is a source city of cocaine in the United States.

Cummings then patted the front of Londono's pants and felt a bulge. Cummings asked Londono if what he felt was cocaine and Londono admitted that it was and removed it from his pants. Cummings then placed Londono under arrest and advised him of his rights under *Miranda* v. *Arizona*, 384 U.S. 436 (1966). He placed Londono in his police cruiser and radioed for back-up assistance and a tow truck. After being advised of his rights, Londono told Cummings that he had purchased the cocaine in Lowell and that Alvarado was with him and knew of the presence of the cocaine in the automobile.

Cummings returned to the Buick, where Alvarado was still seated in the driver's seat. As he approached the Buick, Cummings saw Alvarado remove his hand from the floor area of the back seat on the passenger side. Cummings observed that there was a Norelco coffee maker box on the floor behind the passenger seat. Cummings directed Alvarado to step out of the Buick and placed him under arrest.

After Alvarado was placed under arrest, a second State trooper and a tow truck arrived on the scene. The defendants were taken to the Concord barracks for booking. Trooper Cummings ordered the Buick to be towed to the barracks. On route to the barracks, Cummings contacted his desk officer and requested the assistance of a K-9 officer.

After the defendants were booked and read their Miranda rights again, Cummings learned that both defendants had entered the United States illegally. Cummings then conducted a preliminary inventory search of the Buick. While conducting this search, he noticed the box containing the cof-

fee maker on the floor of the Buick but did not at that time remove it from the automobile or open the box.

Two hours after the defendants were brought to the barracks, a K-9 officer, Trooper Timothy Luce, arrived with his canine, Max. Luce removed the coffee maker box from the car and placed it on the roof of the Buick. Max then examined the vehicle. Max reacted to the odor of cocaine near the glove compartment of the Buick but a search of the compartment revealed no narcotic substance.

Luce reported the negative findings to Cummings. Cummings then went with Luce and Max to the garage area and observed that Luce had placed the coffee maker box on the roof of the Buick. Cummings retrieved the box and opened it. He opened the water well of the coffee maker and found that it contained a plastic bag. He carried the entire box to his work area and opened the plastic bag. Inside were three more layers of plastic wrapping. He removed these and found that the package contained a large quantity of a white, rocky substance. The substance was later determined to be cocaine.

1. *Arrest and search of Londono.* When Cummings approached the Buick after having stopped it, he observed Londono stuffing what he believed to be a glassine bag down the front of his pants.[4] The judge concluded that this observation, combined with Cummings's background, training, and experience, provided Cummings with probable cause to believe that Londono was in possession of a controlled substance and thus Cummings had probable cause to arrest Londono at that point. *Coolidge* v. *New Hampshire*, 403 U.S. 443, 466 (1971).

The defendants argue that Cummings's view of the glassine bag, combined with Londono's placing the bag in his pants did not rise to the level of probable cause required for a valid arrest. We agree with this portion of the defendants'

---

[4]Neither defendant contests the judge's finding that the initial stop of the automobile was justified and within constitutional limits. See *Terry* v. *Ohio*, 392 U.S. 1 (1968). See also *Commonwealth* v. *Bacon*, 381 Mass. 642, 644 (1980). Thus we proceed directly to an examination of the validity of the arrest of Londono, of which the searches at issue are the fruit.

contention. Cummings did not have probable cause to arrest Londono at the moment he observed Londono placing the bag in his pants. The defendants, however, fail to note that the judge found that Londono's arrest occurred *after* Londono had admitted he was in possession of cocaine. Thus, the question is not whether there was probable cause at the time of the first observation by Cummings, but whether there was a basis for Cummings to interrogate Londono based on reasonable suspicion, and whether, at the time of the "pat frisk" there was probable cause to search. As to reasonable suspicion, it is clear that Cummings was entitled, on the facts known to him, to ask Londono to disembark from the vehicle and to conduct a preliminary inquiry and to take "reasonable precautions" for his own safety. *Commonwealth* v. *Johnson*, 413 Mass. 598, 600 (1992) (similar facts; "pat frisk" was also justified). Further, we conclude that probable cause to arrest and search did arise before Trooper Cummings patted the front of Londono's pants. Thus, the arrest and the search incident to that arrest did not violate Londono's Fourth Amendment or art. 14 rights.

Preliminarily, we agree with the judge's ruling that Trooper Cummings's original view from the exterior of the vehicle of Londono's placing the bag into his pants did not implicate the defendants' Fourth Amendment or art. 14 interests. Cummings did not intrude into an area in which the defendants had a reasonable expectation of privacy. The view was from outside the automobile during a valid traffic stop. See *Commonwealth* v. *Santana*, *ante* 205, 207 (1995). Cummings's use of a flashlight to illuminate the interior of the Buick did not render the view a search. *Commonwealth* v. *Doulette*, 414 Mass. 653, 655 (1993), and cases cited; *Commonwealth* v. *Sergienko*, 399 Mass. 291, 295 (1987). The defendants do not dispute this finding.

Cummings testified that he observed a portion of a clear plastic material, which he believed to be a glassine bag, in Londono's fist. However, Cummings did not see the bag or

its contents.[5] He saw only a small portion of the bag, protruding from Londono's fist. The view of an object which may be used for lawful as well as unlawful purposes, even a container of the type commonly used to store controlled substances, is not sufficient to provide the viewing officer with probable cause to seize that object or arrest the individual possessing that object. *Commonwealth* v. *Garcia*, 34 Mass. App. Ct. 645, 650-651 (1993). Nor does the observation of a furtive gesture, such as attempting to conceal an object, give rise, in and of itself, to probable cause. See *Commonwealth* v. *Ortiz*, 376 Mass. 349, 354 (1978); *Commonwealth* v. *Rivera*, 27 Mass. App. Ct. 41, 43-44 (1989). We are of the opinion that the combination of these two factors is more akin to a situation giving rise to a reasonable suspicion based on articulable facts justifying a threshold inquiry than to probable cause.[6] See *Terry* v. *Ohio*, 392 U.S. 1 (1968); *Commonwealth* v. *Silva*, 366 Mass. 402, 406 (1974). Cf. *Commonwealth* v. *Benitez*, 37 Mass. App. Ct. 722 (1994); *Commonwealth* v. *Rivera, supra* at 43-44. What number or combination of additional circumstances is required to establish probable cause must necessarily be left to a case-by-case analysis. The facts present here, the limited view of a glassine bag, the contents of which were not discernible, and Londono's furtive gesture in concealing it in his pants, were insufficient in and of themselves to amount to probable cause to arrest Londono. Cf. *Commonwealth* v. *Santaliz*, 413 Mass. 238 (1992) (probable cause found where officers experienced in narcotics investigations conducting surveillance of soup kitchen known for high incidence of drug activity ob-

---

[5]To the extent that the judge concluded that Cummings observed a controlled substance in plain view, we disagree. The incriminating nature of the object in Londono's fist, a piece of plastic which may or may not have been a glassine bag, was not "immediately apparent." See *Coolidge* v. *New Hampshire*, 403 U.S. 443, 466 (1971); *Commonwealth* v. *Garcia*, 34 Mass. App. Ct. 645, 650-651 (1993). Compare *Commonwealth* v. *Santana, ante* 205, 210-211 (1995).

[6]Indeed, Cummings testified that when he asked Londono to step out of the automobile and began asking him questions, he considered himself to be conducting a threshold inquiry.

served defendant approach taxicab with object and receive money in exchange for object); *Commonwealth* v. *Figueroa*, 412 Mass. 745 (1992) (probable cause where officer discovered wrapped plastic package in plain view during on-scene inventory search and defendant fled when officer made discovery); *Commonwealth* v. *Ortiz*, 376 Mass. 349 (1978) (probable cause found where officers surveilling area known for drug activity observed defendant approach his brother, who was known to the officers as having been arrested on drug charges in the past, and show him a package which resembled a "dime bag" of heroin and, upon officer's approach, defendant threw bag into vehicle and fled); *Commonwealth* v. *Benitez*, 37 Mass. App. Ct. 722 (1994) (probable cause where officers observed individual hand an object to defendant, defendant leave automobile holding a plastic bag in his fist, defendant enter his own automobile and place bag down front of his pants); *Commonwealth* v. *Johnson*, 32 Mass. App. Ct. 355 (1992) (probable cause where officers observed defendant exchange object resembling packet of cocaine for money in area known for drug activity); *Commonwealth* v. *Rivera*, *supra* (probable cause where defendant in area known for drug activity, on seeing officers, turned away, and stuffed glassine bag down front of pants).

Although probable cause to arrest Londono did not arise at the time Cummings saw Londono place the glassine bag in his pants, events subsequent to the initial view of the bag but prior to the patting down of Londono's pants bolstered Cummings's reasonable suspicions, raising them to the level of probable cause. "[P]robable cause exists where, at the moment of arrest, the facts and circumstances within the knowledge of the police are enough to warrant a prudent person in believing that the individual arrested has committed or was committing an offense." *Commonwealth* v. *Santaliz*, 413 Mass. 238, 241 (1992), quoting *Commonwealth* v. *Storey*, 378 Mass. 312, 321 (1979), cert. denied, 446 U.S. 955 (1980). More than a mere suspicion of criminal activity, but less than proof necessary for a conviction, is required. *Commonwealth* v. *Santaliz, supra.*

In the instant case, probable cause arose through a combination of events, including the view of what Cummings, an experienced law enforcement officer with narcotics training, believed was a glassine bag containing a controlled substance being concealed in Londono's pants. Subsequent events bolstered Cummings's suspicion that Londono was in possession of a controlled substance, raising those suspicions to the level of probable cause. Cummings asked Londono several times what he had placed in his pants and told Londono that he had seen him concealing something in his pants. Yet, Londono continuously denied having placed anything in his pants. In addition, Cummings had received what he believed to be a falsified license from Alvarado as well as a false social security number. Londono, after falsely telling Cummings that he was from Puerto Rico, admitted that he was from Medellin, Colombia, a primary source city for cocaine coming into the United States. Finally, Cummings testified that Londono acted in a nervous fashion throughout the inquiry.

It was the combination of all of these circumstances which gave rise to probable cause to arrest Londono. We need not decide at precisely what point the probable cause arose; it is sufficient that it existed at the time that Cummings conducted his search of Londono's person by patting down the front of his pants in search of the object he had seen Londono place there.

Because Cummings had probable cause to arrest at the moment he patted the front of Londono's pants, we conclude that the search was a valid search incident to the arrest. G. L. c. 276, § 1 (1992 ed.). *Commonwealth* v. *Sabetti*, 411 Mass. 770, 776 (1992). *Commonwealth* v. *Gullick*, 386 Mass. 278, 283 (1982). The fact that Cummings searched Londono just prior to placing him under arrest does not render the search unreasonable. See *Commonwealth* v. *Johnson*, 413 Mass. 598, 602-603 (1992); *Commonwealth* v. *Brillante*, 399 Mass. 152, 154-155 n.5 (1987).

2. *Arrest of Alvarado.* The judge's ruling that there was probable cause also to arrest Alvarado, following the arrest

of Londono, was not in error. The facts reasonably believed by Cummings gave him probable cause to arrest Alvarado. In addition to the facts leading to Londono's arrest, Londono informed Cummings that Alvarado was also from Colombia and had been with Londono in Lowell when he bought the cocaine. Londono also stated that Alvarado knew of the presence of the cocaine on Londono's person. This information, together with the fact that Alvarado presented Cummings with a license and social security number which Cummings reasonably believed were falsified, provided Cummings with probable cause to arrest Alvarado for joint or constructive possession of the cocaine found on Londono's person. See *Alicea* v. *Commonwealth*, 410 Mass. 384, 387 (1991); *Commonwealth* v. *Deagle*, 10 Mass. App. Ct. 563 (1980).

3. *Automobile search.* The judge concluded that the cocaine seized from the coffee maker must be suppressed because the search of the Buick at the Concord barracks was neither a valid inventory search, a search incident to arrest, or a search within the "automobile exception" to the warrant requirement of the Fourth Amendment. The Commonwealth appeals from this portion of the judge's order. We agree with the judge that the search cannot be justified as an inventory search or a search incident to an arrest. Nor does the search meet the requirements of the "automobile exception."

The Commonwealth's argument that the search of the Buick at the barracks can be justified as an inventory search, conducted pursuant to written police guidelines, is unpersuasive. First, the judge concluded that the order to tow the Buick exceeded the general order of the department of State police regarding towing. We are inclined to agree with the judge on that point. However, even if we were to decide that the towing was within the written guidelines, the subsequent search of the coffee maker exceeded the scope of a permissible inventory search. Finally, the use of a canine to aid in the search indicates that the search was investigatory in nature, and not an inventory search.

Law enforcement officers do not have discretion regarding what or where to search during an inventory search. *Colo-*

*rado* v. *Bertine,* 479 U.S. 367, 376 (1987) (Blackmun, J., concurring). *Commonwealth* v. *Rostad,* 410 Mass. 618, 622 (1991). Inventory searches are intended to be noninvestigatory and are for the purpose of protecting property which may be within the vehicle. See *Commonwealth* v. *Caceres,* 413 Mass. 749, 754-755 (1992). We have held that, under art. 14, inventory searches of automobiles must be conducted pursuant to standard police procedures, and that those procedures must be in writing. *Commonwealth* v. *Bishop,* 402 Mass. 449, 451 (1988). The relevant portion of the State police guidelines applicable to closed containers states: "All closed but unlocked containers should be opened, and each article inventoried individually." Department of State Police, General Order TRF-10 § 4.2.2 (Dec., 1992). Cummings was authorized to review the contents of the Buick and record those contents. He was also authorized by the guidelines to open the coffee maker box and record the presence of a Norelco coffee maker, but Cummings exceeded his authorization to search when he removed the coffee maker from the box and opened its water well. He further exceeded the scope of an inventory search when he removed the bag from the water well and opened it to discover its contents. The contents of the bag must therefore be suppressed unless the search of the automobile falls under another exception to the warrant requirement. *Commonwealth* v. *Rostad, supra* at 622.[7]

The Commonwealth's contention that the search of the Buick was an inventory search is also defeated by the fact that the police enlisted the assistance of a canine in conducting the search. The canine was trained for, and used in this instance for, the detection of controlled substances. Thus, it is clear that the search of the Buick was of an investigatory nature and was not an inventory search.

---

[7]The Commonwealth's argument that Cummings was justified in examining the water well because it could have contained "valuables" is unpersuasive.

The search of the Buick also cannot be upheld as a search incident to the lawful arrests of Alvarado and Londono. A search incident to arrest is limited to the area within the arrestee's immediate control as its purpose is to protect the arresting officer from weapons and to prevent the destruction of evidence, which may be within the arrestee's reach. *Chimel* v. *California*, 395 U.S. 752 (1969). *Commonwealth* v. *Santiago*, 410 Mass. 737, 743 (1991). A search of an automobile incident to an arrest must be made "contemporaneous" with the arrest of any occupant of the vehicle. *New York* v. *Belton*, 453 U.S. 454, 460 (1981). *Commonwealth* v. *Madera*, 402 Mass. 156, 158 (1988). Here, the Buick was searched two hours after it was towed to the Concord barracks. The search cannot be said to have been made "contemporaneous" with the arrests. See *United States* v. *Vasey*, 834 F.2d 782, 787-788 (9th Cir. 1987). Nor was the search conducted for the safety of the officers or to protect evidence from destruction at the hands of the defendants. The defendants were arrested and booked prior to the search. See *Commonwealth* v. *Santiago, supra* at 743.

The Commonwealth argues, in the alternative, that the search of the Buick can be justified as a search based on the "automobile exception" to the warrant requirement. The so-called "automobile exception" exists when police have probable cause to believe that an automobile contains contraband or evidence of a crime and they are faced with exigent circumstances, making obtaining a warrant impracticable. *Chambers* v. *Maroney*, 399 U.S. 42 (1970). *Carroll* v. *United States*, 267 U.S. 132, 149 (1925). *Commonwealth* v. *King*, 389 Mass. 233, 246 (1983). *Commonwealth* v. *Ortiz*, 376 Mass. 349, 357-358 (1978). In these circumstances, the Commonwealth bears the burden of proving probable cause and exigent circumstances. *Commonwealth* v. *Santiago, supra* at 744.

In his memorandum of decision and order regarding the Commonwealth's motion for reconsideration, the judge found that Cummings "did not have probable cause to believe there was any cocaine in the vehicle other than that already seized

from Londono." He further found that "any exigent circumstances were resolved when the vehicle was impounded and removed to the station." We discern no error in this conclusion. Cummings had no probable cause to believe that the automobile contained cocaine other than the amount seized on Londono's person. Nor was there any evidence of a nexus between the cocaine on Londono's person and the automobile itself. *Commonwealth* v. *Moon*, 380 Mass. 751, 759-761 (1980). The only possible evidence supporting a finding of probable cause was Cummings's observation of Alvarado's hand near, or perhaps in, the coffee maker box just prior to his arrest. We do not think this observation was sufficient to provide Cummings with the probable cause to search the automobile.

The judge's order denying the defendants' motions with respect to the cocaine seized from Londono's person and allowing the motions with respect to the cocaine seized from the automobile is affirmed.

*So ordered.*