NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-298

COMMONWEALTH

vs.

KOBE SMITH.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, Kobe Smith, was charged with multiple crimes, including carrying a loaded firearm without a valid license in violation of G. L. c. 269, § 10 (n), arising out of an interaction with police wherein a firearm was seized from a backpack allegedly belonging to him.  The Commonwealth has filed this interlocutory appeal from an order of a judge of the Boston Municipal Court allowing the defendant's motion to suppress evidence.  We affirm.

Background.  We recite the judge's factual findings in their entirety, as the Commonwealth does not dispute them.

"On May 9, 2020, members of the Youth Violence Strike Force were searching for a [juvenile] named Carl[1] who had an

_____

[1] A pseudonym.

active arrest warrant.  Carl was on a [Global Positioning System] monitoring device at the time.  The device indicated that he was at the Comfort Inn hotel in Dorchester.

"Boston Police Detective Stephen Ridge went to the Comfort Inn and spoke to security staff.  He viewed surveillance footage that confirmed that Carl had entered the hotel. Security staff indicated that he was likely on the second floor.

"Ridge went to the second floor where he encountered a woman . . . in the hallway.  He had a respectful, consensual conversation with [the woman] during which he explained that he was looking for Carl.  [She] said that she had rented two hotel rooms for her sons and their acquaintances.  She directed Ridge to rooms 205 and 206 and gave them consent to enter each room.

"Ridge and roughly four other police officers entered room 206 where they encountered two young men, one of whom was [the woman's] son.  Her son led the officers to room 205.

"Officers knocked on Room 205.  The defendant opened the door and the officers entered the room.  Roughly ten people between the ages fourteen and twenty-one were congregating inside.  An officer immediately indicated that Carl was standing in the corner.

"Officers arrested Carl.  A moment later, Officer Ryan Schain told his fellow officer Eric MacPherson that he recognized one of the male occupants as Jamani Humphries who he knew to have an arrest warrant.  Officers arrested Humphries and then handcuffed the defendant who they moved into the hallway.  One of the occupants asked why the defendant was being handcuffed, to which Officer MacPherson cavalierly responded, 'Cause he's standing right there, so . . . they'll figure it out.'  He then added, 'We're just gonna have to go through and make sure everybody is who they are.'  A moment later, another officer can be heard saying, 'We're just gonna ID everybody here.  Then we're gonna get out of here.'

"Officers demanded identification from every remaining occupant.  They checked the [Criminal Justice Information Services] database and learned that several of the males

had active arrest warrants for offenses including assault, armed robbery, and firearms possession.  One young man was detained because officers believed that he was giving them a false name.  They arrested a total of five people, including Carl and Humphries.  The defendant did not have an arrest warrant but remained handcuffed in the hallway for at least twenty minutes while officers obtained identifying information from the other room occupants.

"There were backpacks, bags, and other personal items strewn about the hotel room.  Several backpacks were on the floor next to the desk.

"A man identified as Richard Archie was one of the last people arrested.  MacPherson asked him if one of the backpacks belonged to him.  Archie initially said, 'Yeah, I'm screwed.  I don't care,' but then indicated that two of them belonged to him.  He identified a backpack and a duffel bag as his property.

"The officers eventually ordered everyone to leave room 205.  They did this because they intended to conduct a general search of the room.  On the body camera footage, Officer MacPherson can be heard saying, 'There's too many people in here to start really looking around.'  At roughly the same time, he and other officers began to put on latex gloves.

"The officers sought to identify the owner of each backpack.  Their purpose was to determine whether a particular bag belonged to an arrestee so that it could be processed as that person's property.  MacPherson indicated that non-arrested parties would be permitted to leave with their own property but frisked the exterior of each backpack before handling it to its owner.

"At some point, Officer Ryan Schain handed a backpack to Officer Eric MacPherson and told him that he had found a gun inside.  MacPherson looked inside and saw a gun.  He also found paperwork with the defendant's name on it.

"Schain did not testify at the suppression hearing.  The Court makes no finding as to where Schain located the backpack, whether he unzipped the backpack, or how he came to locate the gun inside."

3

Based on these factual findings, the judge concluded that the detention of the defendant was unreasonable because, even if the initial detention was lawful, once officers had arrested Carl and Humphries there was no reason to further detain the defendant. In addition, the judge ruled that the search of the backpack at issue was unlawful because the backpack was not connected to a specific person placed under arrest. The Commonwealth failed to call the officer who located the backpack as a witness, leaving the judge with no evidence as to where police found the backpack, whether the backpack was open or closed, who may have been near the backpack, or how the police officer saw the gun inside of it. The judge then suppressed the evidence of the firearm.

Discussion. When reviewing a ruling on a motion to suppress, "we accept the judge's subsidiary findings of fact absent clear error but conduct an independent review of his ultimate findings and conclusions of law." Commonwealth v. Silvelo, 486 Mass. 13, 15 (2020), quoting Commonwealth v. Perkins, 465 Mass. 600, 601 (2013). As noted above, the Commonwealth does not contest any of the judge's findings of fact. Rather, it maintains that the motion judge made an error of law in concluding that the detention of the defendant was unreasonable and that the search of his backpack was

4

unconstitutional.  As to the search of the backpack, the Commonwealth contends that it was justified either as a search incident to the arrest of the five occupants in the hotel room or as a protective sweep because several of the arrestees were charged with crimes of violence.

We need not address the Commonwealth's argument that the motion judge erred in finding that the detention of the defendant was unreasonable in the circumstances.  Even assuming, without deciding, that the Commonwealth is correct, it does not necessarily follow that the search of the backpack at issue was justified.

Setting aside the issue of the reasonableness of the defendant's detention in the hallway, we turn to the issue of the search of the backpack.  "Warrantless searches are presumptively unreasonable under both the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights."  Commonwealth v. Ortiz, 487 Mass. 602, 606 (2021).  "Warrantless searches, however, 'may be justifiable . . . if the circumstances of the search fall within an established exception to the warrant requirement'" (citation omitted).  Id.  "Among the exceptions to the warrant requirement is a search incident to a lawful arrest" (citation omitted).  Commonwealth v. Perkins, 465 Mass. 600, 605 (2013).  Under this

5

exception, police may, incident to a lawful arrest, "search a bag carried by a person . . . where there is also probable cause to believe that the bag contains evidence of the crime for which the arrest was made" (citation omitted). Commonwealth v. Phifer, 463 Mass. 790, 795 (2012).

"Once a custodial arrest occurs . . . no additional justification is required for a search of the person for weapons that otherwise might be used to resist arrest or to escape, or to discover evidence of the crime for which the arrest was made." Commonwealth v. Prophete, 443 Mass. 548, 552 (2005). This type of search must be limited "to the body of the person arrested and the area and items within his or her immediate possession and control at the time." Commonwealth v. Phifer, 463 Mass. 790, 794 (2012), quoting Commonwealth v. Santiago, 410 Mass. 737, 743 (1991). Police "may secure the arrestee and then safely search the area within his immediate control at the moment of arrest." Commonwealth v. Figueroa, 468 Mass. 204, 216 (2014). "The 'geographic scope' of a lawful search incident to arrest is the area within [an arrestee's] 'immediate control' at the moment of arrest" and not the "'grab area' at the time of the search, when the [individual was] restrained or handcuffed." Id. at 215-216. In Figueroa, the court upheld the search of a duffel bag incident to arrest even though the arrestee was

6

handcuffed at the time of the search.  See id. at 216.  The court reasoned that it would undermine officer safety to require police "to seize all evidence within the arrestee's immediate control before securing the arrestee."  Id. at 215.

Here, soon after the police officers lawfully entered room 205, they had probable cause to arrest Carl and, upon seeing him, Humphries.  Lawfully or not, something we need not and do not decide, the officers soon developed probable cause to arrest several other occupants due to outstanding warrants.  However, the defendant was detained in the hallway and, while all parties agree that he was seized, there was no probable cause to arrest the defendant for the commission of a crime and he did not have any outstanding warrants.  Therefore, the seizure and search of the backpack at issue cannot be justified as a search incident to *his* arrest.  Rather, the Commonwealth argues, the police were permitted to search the entire hotel room as a search incident to the arrest of the five occupants in the hotel room.  We are not persuaded.[2]

---

[2] Nor was this a permissible "protective sweep," which, when permitted, can extend only to areas where a dangerous individual could be hiding.  "While executing an arrest warrant, police may conduct a protective sweep, 'a quick and limited search of the premises' to protect the officers' safety, if they have a reasonable belief based on 'specific and articulable facts' that the area could harbor a dangerous individual."  Commonwealth v. Matos, 78 Mass. App. Ct. 156, 159 (2010), quoting Maryland v. Buie, 494 U.S. 325, 327 (1990).

7

At bottom, the Commonwealth's theory that the backpack at issue was properly seized and searched as a search incident to the arrest of his companions in the hotel room suffers from a fatal flaw -- the failure by the prosecutor to call Officer Schain to testify at the motion to suppress hearing. Without his testimony, there was no evidence indicating where the backpack at issue was located. Instead, the evidence showed only that several bags and backpacks were together in a corner of the hotel room, which was insufficient to establish where this particular backpack was found. The Commonwealth's argument that the backpack was "most likely" located in the heap of bags in the corner of room 205 is not enough, without more, to justify the warrantless search. It was the Commonwealth's burden to establish the facts that would support a judge's conclusion that the item seized was permissible as an exception to the search warrant requirement. Because the prosecutor failed to establish this crucial testimony, the backpack's seizure and search cannot be justified as a search incident to arrest.

The Commonwealth concedes that the "record lacks clarity as to the specific location of the defendant's backpack and the matter in which it was initially searched by Officer Schain." However, the Commonwealth contends that this fact is not

determinative because the body camera footage sufficed to show that the backpack was located somewhere in the room.  This argument, however, misses the mark as police do not have unfettered discretion or the absolute right to search an entire hotel room, including inside closed bags, simply because they placed one or more occupants of the room under arrest.  Because the body camera footage does nothing more to illuminate where the backpack in question was located or its condition, we agree with the motion judge that, as a matter of law, its seizure and search was unlawful, and the evidence must be suppressed.

_Order allowing motion to suppress affirmed_.

By the Court (Rubin, Walsh & Hershfang, JJ.[3]),

Clerk

Entered:  February 6, 2026.

---

[3] The panelists are listed in order of seniority.