COMMONWEALTH *vs.* CEDRIC BRINSON
(and five companion cases[1]).

Suffolk. October 9, 2003. - December 30, 2003.

Present: MARSHALL, C.J., GREANEY, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Constitutional Law,* Search and seizure. *Search and Seizure,* Inventory, Impoundment of vehicle. *Waiver.*

Criminal defendants charged with multiple drug offenses waived the issue whether a pretrial motion to suppress evidence police found in one defendant's car should have been granted, where there was no objection to the officers' testimony regarding inventory procedure on either hearsay or best evidence grounds, and where the defendants failed to show that the failure to introduce a written inventory search procedure at the suppression hearing caused a substantial risk of a miscarriage of justice. [611-612]
This court concluded that police had no authority to impound a car based on the arrest of the owner on drug charges, where the car was lawfully parked in a privately owned parking lot (a location unrelated to the arrest) and there was no evidence that the car constituted a safety hazard or was at risk of theft or vandalism [612-615]; where the police community caretaking function did not encompass towing a lawfully parked car from private property in the wake of an unrelated arrest [615-616]; and where G. L. c. 266, § 120D, did not grant the police discretionary authority to tow a car from private property [616-617]; accordingly, evidence found in the impounded car should have been suppressed, as the impoundment was unlawful and there was no independent probable cause to search the car [617].

INDICTMENTS found and returned in the Superior Court Department on December 23, 1999.

A pretrial motion to suppress evidence was heard by *James D. McDaniel, Jr.,* J., and the cases were heard by *Robert A. Mulligan,* J.   ·

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Abraham J. Mayers* for Cedric Brinson.
*Todd M. Gornstein* for Robert Horsley.

[1]Three against Robert Horsley and two against Cedric Brinson.

*Donna Jalbert Patalano*, Assistant District Attorney, for the Commonwealth.

Spina, J. Cedric Brinson and Robert Horsley were convicted of multiple drug charges. Before trial, a judge in the Superior Court denied the defendants' motion to suppress evidence seized by the police during an inventory search of Brinson's car made after arresting both men. Brinson's car was impounded at a commercial lot in a location different from the arrest, and the defendants claimed that the impoundment and search were invalid because the arrest was unrelated to the use of the car. They also claimed that the motion to suppress should have been allowed because the Commonwealth failed to offer its written inventory search procedures in evidence. The judge determined that, because the police officers had probable cause to arrest the defendants, they were permitted to impound the car and conduct an inventory search of the car previously occupied by the defendants. The judge also concluded that, although the police were permitted to conduct an inventory search of the car pursuant to arrest and impoundment, they did not have independent probable cause to search the parked car. The defendants appealed from their convictions and challenge the denial of their motion to suppress. We transferred the case here on our own motion. We reverse and hold that the government may not impound and conduct an inventory search of a car based on the arrest of the owner, where the car was lawfully parked in a privately owned parking lot and there was no evidence that the car constituted a safety hazard or was at risk of theft or vandalism.

1. *Background.* On the evening of October 27, 1999, Officer David O'Sullivan, Sergeant Detective Richard Daley, and Detective Robert Pieroway, undercover officers with the Boston police department drug control unit, conducted surveillance of a commercial parking lot in a high crime area where drug deals were known to take place. With the use of binoculars, the officers saw a Subaru automobile enter the lot and park next to a parked GMC Jimmy vehicle occupied by Clevins Lewis. Brinson and Horsley got out of the Subaru and entered the GMC Jimmy. Brinson, Horsley, and Lewis drove out of the parking lot in the GMC Jimmy.

The officers followed the Jimmy for one and one-half miles to the Forest Hills Massachusetts Bay Transportation Authority station parking lot. Brinson walked over to a Cadillac automobile in the parking lot and spoke to a man standing alongside, later determined to be Stanford Cole. Brinson and Cole walked over to the Jimmy. Cole entered while Brinson stood outside. Within one minute, Cole emerged from the Jimmy, walked back to the Cadillac, and drove out of the parking lot. Brinson reentered the Jimmy, which then left the parking lot.

The officers followed both cars until they began to travel in different directions, at which time uniformed officers in marked cruisers were dispatched to follow the two cars. The undercover officers, followed by a marked cruiser, stopped Cole in the Cadillac and recovered a bag believed to be crack cocaine. The officers radioed for the second marked cruiser to stop the Jimmy. The Jimmy was stopped within one mile of the Forest Hills station. The officers smelled marijuana while approaching the Jimmy, recovered two marijuana cigarettes burning in an ashtray, and arrested Brinson, Horsley, and Lewis for distribution of cocaine.

O'Sullivan and Pieroway returned to the lot where Brinson's car was parked. Daley had begun to conduct an inventory search of the Subaru pursuant to the department's inventory search procedure. The police impounded the car based on the arrest of Brinson. The precise distance between the location of Brinson's arrest and his car is not clear from the record. The inventory search of Brinson's car uncovered underneath the steering column eleven bags believed to contain crack cocaine.

2. *Inventory search.* The defendants argue that the motion to suppress should have been allowed because the Commonwealth failed to produce a written inventory search procedure at the suppression hearing and relied on hearsay testimony regarding the written procedure. This issue has been waived because there was no objection to the officers' testimony on either hearsay or best evidence grounds.[2] The defendants have failed to show that

---

[2]The Commonwealth runs the risk that evidence concerning the written procedure will be excluded on best evidence or hearsay grounds unless it

the failure to introduce the written procedure caused a substantial risk of a miscarriage of justice.

3. *Impoundment.* The defendants next argue that the inventory search of Brinson's car was invalid because the police had no authority to impound a car that was lawfully parked at a location unrelated to Brinson's arrest. The Commonwealth contends that the search of the Subaru was a valid noninvestigatory inventory search of an arrested individual's car pursuant to standard police impoundment and inventory procedure.[3] A lawful inventory search is contingent on the propriety of the impoundment of the car. *Commonwealth* v. *Garcia*, 409 Mass. 675, 678 (1991). In this case, the judge failed to consider whether the impoundment was justified and simply concluded that the inventory search procedure permits police to tow a car left unattended due to an arrest. We must decide whether the police could lawfully impound Brinson's car.

"The impoundment of a vehicle for noninvestigatory reasons is generally justified if supported by public safety concerns or by the danger of theft or vandalism to a vehicle left unattended." *Commonwealth* v. *Daley*, 423 Mass. 747, 750 (1996) (impoundment proper when driver ordered to stop car even if driver not arrested, where car was unregistered, uninsured, and had registration plate belonging to another car, and thus could not be operated). See *Commonwealth* v. *Caceres*, 413 Mass. 749, 750-753 (1992) (impoundment justified where car stopped by police on highway, driver arrested, and no alternative but its removal); *Commonwealth* v. *Ellerbe*, 430 Mass. 769, 775 (2000) (known risk of theft and vandalism in parking lot restricted to patrons justified impoundment where driver arrested after police directed her to pull over); *Commonwealth* v. *Dunn*, 34 Mass. App. Ct. 702, 705-706 (1993) (risk of theft and vandalism in parking lot not open to public justified impoundment where intoxicated driver arrested after being pulled over). Where a car is stopped in a parking lot at the direction of police and is

produces the written procedure at the hearing or obtains a stipulation as to its contents beforehand.

[3]The Commonwealth does not attempt to justify the search of Brinson's car as a search incident to a lawful arrest, see, e.g., *Commonwealth* v. *Almeida*, 373 Mass. 266 (1977), or as a search based on probable cause. See *Commonwealth* v. *Alvarado*, 420 Mass. 542 (1995).

rendered immobile by the arrest of the driver, police may also impound the car to relieve the landowner of the burden of removing the car. See *id.* at 706.

Although cases frequently involve circumstances where the police order a driver to stop the car, courts have also considered impoundment in circumstances where the police did not direct the driver to stop the car, but instead found the car already parked in a lot after arresting the defendant in the vicinity of the car.[4] "Seizure is an appropriate course when the owner or manager of the parking facility asks that the car be removed, but otherwise is inappropriate, at least when the offense for which the arrest is made is so minor that the defendant's prompt release can be anticipated."[5] 3 W.R. LaFave, Search and Seizure § 7.3 (c), at 521 (3d ed. 1996). Courts have upheld the impoundment of a car from the lot associated with the arrest location when accompanied by such circumstances as threats of vandalism, parking restrictions, police liability concerns, or the inability of the defendant or another later to move the car. See *United States* v. *Martin*, 982 F.2d 1236, 1240 (8th Cir. 1993) (lawful impoundment of car at parking lot where arrest occurred because no one was available to take custody of unlocked car with valuable equipment inside in plain view); *United States* v. *Kornegay*, 885 F.2d 713, 716 (10th Cir. 1989) (lawful impoundment at lot associated with building within which driver arrested because defendant's identity was unknown, police had "reason to believe he would not be returning anytime soon," and threat of theft and vandalism); *United States* v. *Hall*, 565 F.2d 917, 919-921 (5th Cir. 1978) (car lawfully impounded after defendant arrested for public intoxication immediately after stepping out of car); *State* v. *Bradford*, 25 Ariz. App. 518, 519 (1976) (lawful impoundment of car that police had been pursuing and then abandoned on private property); *Biggers* v. *State*,

---

[4] Cases generally include defendants who parked their cars in the parking lot provided by the store or restaurant where the arrest occurred. See 3 W.R. LaFave, Search and Seizure § 7.3 (c), at 521 (3d ed. 1996).

[5] The record did not indicate the defendant's ability to arrange for the later removal of the car. See *Commonwealth* v. *Dunn*, 34 Mass. App. Ct. 702, 705 (1993), and cases cited (courts consider whether driver will later be able to move car).

162 Ga. App. 163, 164 (1982) (police may impound car from church parking lot where arrest occurred because of expired registration plate and warning of weapon in car that posed danger to public); *People* v. *Krezen*, 427 Mich. 681, 687-692 (1986) (lawful impoundment from temporary lot outside of air freight office because of threat of vandalism due to purse visibly left on seat and because officers were sued in past for failure to impound).

Absent those attendant circumstances, impoundment of a car in the parking lot associated with the building in which the driver was arrested has been held to be unlawful. See *State* v. *Bertram*, 18 Ariz. App. 579, 582 (1972) (police may not tow and inventory car safely parked in commercial lot not in proximity of arrest); *Weed* v. *Wainwright*, 325 So. 2d 44, 45 (Fla. Dist. Ct. App. 1975) (car left unattended after arrest insufficient reason to justify search); *Dunkum* v. *State*, 138 Ga. App. 321, 325 (1976) (police may not impound car not involved in drug deal and safely parked in commercial lot); *Dixon* v. *State*, 23 Md. App. 19, 38 (1974) (unlawful impoundment of car parked in lot in different location from arrest because there was no impediment to traffic or apparent danger to car); *Lee* v. *State*, 628 P.2d 1172, 1173 (Okla. 1981) (unlawful impoundment of car "in no way connected to the crime" and posed no traffic hazard); *State* v. *Thirdgill*, 46 Or. App. 595, 597 (1980) (police may not impound arrested individual's car parked in commercial lot because it was unrelated to crime and did not obstruct traffic, and lot owner did not request its removal).

Here, the Subaru posed no public safety risk, and the record contains no evidence of threat of vandalism to justify impoundment. Although there was testimony that the commercial lot was a common drug traffic area, there was no evidence that the police had specific knowledge that unattended cars would be especially vulnerable to theft or vandalism. See *Commonwealth* v. *Ellerbe, supra* at 775. Unlike the lots in both the *Ellerbe* and *Dunn* cases, this commercial lot was open to the public without limitation. There were no parking restrictions from which it could be determined that the car had been illegally parked, and there had been no request by the lot owner

to tow the car. Thus, there were no attendant circumstances that would justify police impoundment of the car.[6]

4. *Community caretaking function.* The police community caretaking function does not encompass towing a lawfully parked car from private property in the wake of an unrelated arrest. We have held that the community caretaking function is implicated if there is an objectively reasonable basis for believing that the safety of an individual or the public is jeopardized. See *Commonwealth* v. *Evans*, 436 Mass. 369 (2002) (police may inquire if driver needs assistance when car parked in breakdown lane); *Commonwealth* v. *Murdough*, 428 Mass. 760, 762 (1999) (police permitted to inquire about physical condition of driver asleep while parked at rest stop in cold weather); *Commonwealth* v. *Leonard*, 422 Mass. 504 (1996) (police permitted to open door of car parked in breakdown area if driver unresponsive). Cf. *Commonwealth* v. *Smigliano*, 427 Mass. 490, 492-493 (1998) (caretaking function inapplicable in absence of need for immediate assistance).

Car impoundments may be justified under the community caretaking function if the car is disabled, or illegally parked, or is impeding traffic. See *South Dakota* v. *Opperman*, 428 U.S. 364, 368-369 (1976).[7] The community caretaking function is invoked for the protection of people. The limitations of the caretaking function do not allow for the impoundment of a car

---

[6]Where there were no such attendant circumstances, we need not address whether the additional factor of distance — here, a considerable distance between the place of the arrest and the location of the parked car — would suffice to invalidate the impoundment even in the presence of such attendant circumstances. Where the arrest of the owner or operator did not occur on the same or related premises where the car had been parked, the few courts that have considered the question have decided that the arrest may not be used as a basis for impoundment. See 3 W.R. LaFave, Search and Siezure § 7.3 (c), at 519 (3d ed. 1996); *Brown* v. *Superior Court*, 119 Ariz. 205 (1978) (unlawful impoundment of car parked four miles from arrest); *Rodriquez* v. *State*, 641 S.W.2d 955, 958 (Tex. Ct. App. 1982) (unlawful impoundment because it was drug dealer, not his car parked in alley behind house, that was focus of arrest occurring in driveway); *Benavides* v. *State*, 600 S.W.2d 809 (Tex. Crim. App. 1980) (impoundment of car parked two blocks from arrest was invalid, despite parking restriction and inability of arrestee later to remove car).

[7]The Supreme Court of the United States has identified inventory searches according to police community caretaking function as a "narrow exception" to the warrant requirement. See *Colorado* v. *Bertine*, 479 U.S. 367, 381 (1987).

left unattended in a privately owned parking lot where it poses no traffic hazard. See *Tomlin* v. *State*, 869 P.2d 334, 342 (Okla. 1994). There was no evidence here that the Suburu constituted a traffic hazard or any other threat to public safety.

Some courts have extended the community caretaking function to apply to postarrest impoundments where, although there was no threat to public safety, the car itself was imperiled. See *Woodford* v. *State*, 752 N.E.2d 1278, 1281 (Ind. 2001) (suspicion that car police pulled over was stolen justifies impoundment under caretaking function).[8] Thus, under a community caretaking analysis, impoundment of lawfully parked cars requires a showing of likelihood of threat or vandalism. See *United States* v. *Duguay*, 93 F.3d 346, 352-353 (7th Cir. 1996) (no impoundment of car under caretaking function without sufficient rationale beyond fact that driver was arrested and there was chance of vandalism or theft). There was no such showing here.

5. *Statutory authority.* The impoundment of the Subaru did not comport with G. L. c. 266, § 120D, which provides:

> "No person shall remove a motor vehicle which is parked or standing on a private way . . . unless the operator of such vehicle has been forbidden so to park or stand . . . by the person who has lawful control of such way or property. No vehicle shall be removed from such way or property without the consent of the owner of such vehicle unless the person who has lawful control of such way or property shall have notified the chief of police . . . that such vehicle is to be removed."

The parking lot where Brinson parked the Subaru was a privately owned public access parking lot. Under the statute, it is the private property owner's prerogative to seek removal of

---

[8]Cases where the community caretaking function has been applied to police impoundment of lawfully parked cars specifically include either arrests made after pulling the driver over in a parking lot or arrests made on the premises with which the parking lot was associated. The caretaking duty was then invoked to alleviate the hazard posed to the car after an arrest in that location. See *United States* v. *Ponce*, 8 F.3d 989, 996 (5th Cir. 1993) (police pulled truck over and arrested defendant in public parking lot "where [truck] could have been damaged or stolen"); *United States* v. *Staller*, 616 F.2d 1284, 1290 (5th Cir. 1980) (driver arrested in mall store and car impounded from mall lot where police aware of "appreciable risk of vandalism or theft").

an unattended car. Cars left unattended on private property are a purely private matter except in circumstances absent here. The Subaru was lawfully and safely parked in a commercial lot and the lot owner did not seek its removal from the police. We do not construe G. L. c. 266, § 120D, as a grant of discretionary authority for police to tow a car from private property. Absent a request to tow from the property owner or the consent of the car owner, the statute gives police no such authority.

6. *Conclusion.* Brinson voluntarily and lawfully parked the Subaru in a privately owned commercial lot, and the Commonwealth produced no evidence that the car presented a hazard or was likely to be stolen or vandalized. Thus, the police had no authority to impound the car. The evidence found in the Subaru should have been suppressed because the Subaru was unlawfully impounded and there was no independent probable cause to search the car.

We vacate the order denying the motion to suppress and remand the cases to the Superior Court for entry of an order allowing the motion to suppress.

*So ordered.*