Fabricant, Judith, J.
INTRODUCTION
The defendant is charged with burglary and other offenses arising from an incident in Milton on October 6, 2003. Presently before the Court is the Commonwealth’s Motion in Limine to admit in evidence at trial a tape recording of a 911 call placed to the Milton Police Department by the alleged victim of the burglary, Rita Lutz. Ms. Lutz, now age 79, has indicated that she is unwilling to testify at trial. She has not been subject to cross examination in any pretrial proceeding. The Commonwealth therefore seeks to prove the occurrence of the burglary by means of her statements during the recorded call; without that evidence, it concedes, it cannot prove the charge. For the reasons that will be explained, the motion will be denied.
*150 BACKGROUND
On the evening of October 6, 2003, the Milton Police Department received a call on the 911 telephone line. The call was recorded, pursuant to routine procedure. The tape recording, played at the hearing on this motion, reveals the following conversation. The dispatcher answered, “911 line, what’s your emergency.” Ms. Lutz responded, “I’m at 63 Silverbrook Road and someone just broke in my back door.” The dispatcher asked a brief series of questions, eliciting that Ms. Lutz did not know the identity of the intruder, that Ms. Lutz was still in the house, and that the door was still open. The dispatcher spoke to police units; I infer that he dispatched them to the scene. He then asked further questions of Ms. Lutz, eliciting that the intruder had broken a door and entered the back porch, that she had seen a black leather jacket, and that the intruder had left through the same door and “gone into the back yard, I guess.” The dispatcher again spoke to police units; I infer that he conveyed the information Ms. Lutz had provided. The dispatcher resumed questioning Ms. Lutz, eliciting that she had “a veiy dark back area,” that the intruder had crouched down, and that she did not know whether he had seen her or not. The dispatcher informed Ms. Lutz that he wanted “to stay on the line in case someone’s in the house.” Ms. Lutz asked whether a particular police officer was on duly, noting that “he lives two doors down.” The dispatcher informed her that the named officer was not on duty. The conversation ended when the dispatcher informed Ms. Lutz, after communication from the units dispatched, that police were “right around the corner.” Throughout the conversation, Ms. Lutz spoke in a tone of fearfulness, conveying concern for her safely. Some time after the conclusion of the call, police located the defendant, wearing a black leather jacket, crouching down in the yard of a nearby house. They also located an unregistered vehicle that was unfamiliar to the neighborhood, with keys inside it, bearing a plate that did not belong to it. A search of the vehicle yielded identification belonging to the defendant, along with items later determined to have been stolen from other locations.
DISCUSSION
As both sides recognize, the governing authority is the recent decision of the Supreme Judicial Court in Commonwealth v. Gonsalves, 445 Mass. 1 (2005), construing the decision of the United States Supreme Court in Crawford v. Washington, 541 U.S. 36 (2004). Crawford established that testimonial out-of-court statements are inadmissible under the confrontation clause of the sixth amendment to the United States Constitution, and that statements made in response to police interrogations are testimonial. Id. at 68.
In Gonsalves, the SJC held that “statements made in response to questioning by law enforcement agents are per se testimonial, except when the questioning is meant to secure a volatile scene or to establish the need for or provide medical care.” 445 Mass. at 3. Such questioning, the Court observed, includes “ ‘investigatory interrogation,’ such as preliminaiy fact gathering and assessment whether a crime has taken place.” Id. at 9. Questioning to secure a volatile scene, however, “is not commonly understood as related to the investigation or prosecution of a crime,” but is rather “part of the government’s peacekeeping or community care-taking function.” Id. at 9. For that reason, statements elicited by such questioning are not testimonial per se. “The community caretaking function is implicated if there is an objectively reasonable basis for believing that the safety of an individual or the public is jeopardized.” Id., quoting Commonwealth v. Brinson, 440 Mass. 609, 615 (2003). The Court noted that a volatile scene may extend beyond the scene of the original incident to include situations that “pose immediate danger to the safety of the community.”
Further, the Court held, “out of court statements that are not testimonial per se must be examined to determine if they are nonetheless testimonial in fact by evaluating whether a reasonable person in the declarant’s position would anticipate his statement being used against the accused in investigating and prosecuting a crime.” Id. at 3. The Court specifically reserved the question of 911 telephone calls, 445 Mass, at 9, n.4, although the concurrence (Sosman, J.) pointed out that its formulation would seem to encompass virtually all statements made in such calls. Id. at 32-33.
Gonsalves arose from allegations of domestic violence. A young woman was with her boyfriend in her mother’s apartment. The mother heard yelling, screaming, and crying. After the boyfriend had left, the young woman reported to her mother, in response to inquiries, that he had hit her. When police arrived soon after, the young woman was upset, but not visibly injured. In response to questioning, she repeated the allegation, with further detail, and identified the defendant by name and description. On those facts, the Court concluded that the complainant’s statements to the police were testimonial per se, because the police inquiry was not “intended or necessary to secure a volatile scene or procure needed medical attention.” Id. at 17. Her statements to her mother, in contrast, were not testimonial, since her mother was not an agent of the police and did not inquire for the purpose of establishing a basis for prosecution, and since the complainant was not in a position to foresee that her statements to her mother would be used for criminal investigation and prosecution.
In this case, it is clear that Ms. Lutz spoke in response to questions posed by an agent of the police. It is equally clear, however, that the circumstances presented an objectively reasonable basis for believing that the safety of Ms. Lutz was jeopardized. An elderly woman, apparently alone in her home after dark, reported that an unknown intruder had entered and *151 might still be on the grounds. Indeed, the dispatcher’s comment to Ms. Lutz made clear that he was in fact concerned for Ms. Lutz’s safety; he sought to keep her on the line until police arrived in case the intruder might still be present. Further, the questions asked appear directed at obtaining information to assist police arriving on the scene in assessing what if any danger existed. These facts contrast with those in Gonsalves, where the alleged assailant was known to have left. I conclude, therefore, that the questioning by the police dispatcher was for the purpose of securing a volatile scene, and that Ms. Lutz’s statements in response to that questioning were not testimonial per se.
That conclusion does not end the analysis; it remains to determine whether the statements were testimonial in fact, in that a reasonable person in Ms. Lutz’s position would have anticipated their use for investigation or prosecution. Ms. Lutz’s tone and words make clear that her purpose was not to facilitate investigation or prosecution, but to seek help in a situation of perceived danger. Nevertheless, she reported what a reasonable lay person would have recognized to be a crime, and gave the limited information she had to describe that person and his apparent location at the time of the call. A reasonable person, having given that information, would expect that police would search the surrounding area in an effort to find the intruder, and if successful, would initiate prosecution.
The Commonwealth attempts to distinguish these facts from those in Gonsalves on the ground that Ms. Lutz, unlike the complainant there, was unable to identify the accused. But nothing in Gonsalves suggests that the analysis depends on such identification. It is hardly unusual that a complainant does not identify a perpetrator by name or otherwise, but gives only descriptive information. A reasonable person would anticipate that such information would facilitate investigation, which might then lead to identification, as indeed it did here. I conclude, therefore, that Ms. Lutz’s statements in the 911 call, although not testimonial per se, are testimonial in fact, and are therefore inadmissible at trial.
CONCLUSION AND ORDER
For the reasons stated, the Commonwealth’s Motion in Limine is DENIED.