## COMMONWEALTH *vs.* GERALD EDDINGTON
## (and six companion cases[1]).

No. 08-P-2121.

Hampden. October 13, 2009. - January 26, 2010.

Present: KAFKER, KATZMANN, & RUBIN, JJ.

Further appellate review granted, 456 Mass. 1106 (2010).

*Search and Seizure,* Automobile, Inventory, Impoundment of vehicle. *Constitutional Law,* Search and seizure. *Motor Vehicle,* Firearms. *Practice, Criminal,* Motion to suppress.

A Superior Court judge erred in granting the criminal defendants' motion to suppress a firearm and ammunition found by police during an inventory search of an impounded motor vehicle, based on the conclusion that the decision to impound the vehicle was unwarranted, where the evidence demonstrated that the vehicle, which otherwise would have been left unattended on a public street in a high-crime area for an indefinite period of time, was in danger of theft or vandalism so that, when combined with the risk of false claims for loss against the police, its impoundment pursuant to a constitutionally adequate police policy was reasonable and permissible under constitutional principles. [175-179]

INDICTMENTS found and returned in the Superior Court Department on June 6, 2007.

A pretrial motion to suppress evidence was heard by *C. Brian McDonald,* J.

An application for leave to prosecute an interlocutory appeal was allowed by *Robert J. Cordy,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court.

*James C. Orenstein,* Assistant District Attorney, for the Commonwealth.

*Adriana Contartese* for Gerald Eddington.

*Thomas F. McGuire* for Jessica Cappas.

RUBIN, J. This case involves the impoundment and inventory

---

[1]Three against Gerald Eddington, and three against Jessica Cappas.

search of a vehicle driven by the defendant Gerald Eddington, in which the defendant Jessica Cappas was a passenger, after the vehicle was pulled over by the police. The Commonwealth appeals from the suppression of evidence discovered during the search. The only question before us is the propriety of the police decision to impound the vehicle.

1. *Facts.* The motion judge found that in the early morning of April 29, 2007, Springfield police Officers David Martin and Matthew Vickery took a surveillance position to observe activities at an after-hours party taking place in a Springfield residence. The residence, located near the corner of Colonial Avenue and Wilbraham Road, was well known to them as the scene of regular after-hours parties. Such parties frequently involved criminal activities and a police response thereto. These criminal activities had included two murders, shootings, fighting, public drinking outside the residence, and illegal parking problems. The organizer of these parties was well known to the police department.

At about 4:15 A.M., the officers saw two persons, the defendants here, coming out of the residence carrying clear glass "long neck" bottles, from which both drank as they walked across Wilbraham Road to a parking lot across the street. The officers believed the bottles were beer bottles, specifically Corona brand beer bottles. Each officer was familiar with the distinctive design and the painted label of Corona beer bottles. Officer Vickery was able to see the label; Officer Martin was not. Officer Martin had been present at many after-hours parties in the area, including parties at this same residence, and knew that Corona was the beer of choice at such parties.

The officers then observed the defendants walking into the parking lot and getting into a motor vehicle. The vehicle turned left out of the parking lot onto Wilbraham Road and then left again onto Suffolk Street. The officers followed the vehicle and signaled it to stop by using their blue lights and siren. The vehicle stopped promptly. It pulled to the side of Suffolk Street, a short distance from the house where the party was being held, and stopped at a location where it was lawful to park. The officers approached the vehicle to investigate their suspicion that the defendants had open containers of alcoholic beverages in the vehicle. Officer Martin looked into the vehicle while asking

the driver, Eddington, for his license and the vehicle's registration. Two open bottles of Corona beer were in plain view in the cupholders on the console between the front seats. Officer Martin began to prepare citations for the defendants for the open containers of beer in the car.

Eddington advised Officer Martin that he did not have a license. The officers determined that his license had been suspended, and he was removed from the vehicle and arrested. Eddington also could not produce the vehicle registration. The officers ran a check of the vehicle's license plate number and determined that the vehicle did not belong to either Eddington or the passenger, Cappas, but was registered to a Jessica Rodriguez.

As it was about 4:30 A.M., the officers decided that they would not attempt to contact the vehicle's owner to request that she take control of the vehicle from the scene. The judge found that the officers knew Suffolk Street near Wilbraham Road to be a high-crime area, and that the officers were concerned that if they left the vehicle at the curb it would be vulnerable to theft and damage. Accordingly, the officers decided to have the vehicle towed from the scene. It was at this point that Cappas was ordered from the vehicle.

Officer Vickery and a newly-arrived officer, Roland Gonzalez, performed an inventory search of the vehicle pursuant to the written policy of the Springfield police department. Officer Vickery discovered a loaded revolver under the passenger seat. Cappas was then arrested and charged with possession of the firearm and ammunition. Eddington, who had already been arrested, was also charged with possession of the firearm and ammunition.

The motion judge granted the defendants' motion to suppress the firearm and ammunition. He concluded that the Commonwealth had presented insufficient evidence that the vehicle was at risk of theft or vandalism because "[t]he nature of the crimes" that rendered the location of the stop a high-crime area "was not described." A single justice of the Supreme Judicial Court allowed this interlocutory appeal.

2. *Discussion.* The Commonwealth contends that the motion judge erred by finding the impoundment of the vehicle, and thus the subsequent inventory search, unlawful.[2] In the case of

---

[2]This is the only issue before us. The defendants do not contend that the

an inventory search, "the propriety of the impoundment of the vehicle is a threshold issue in determining the lawfulness of the inventory search." *Commonwealth* v. *Garcia*, 409 Mass. 675, 678 (1991).

Police impoundment of a stopped vehicle is an appropriate response to a risk of theft or vandalism considered "together with the need to protect the police from false claims of loss," where "specific evidence . . . point[s] to a 'danger that the vehicle left unattended' . . . might 'be vandalized or stolen.'" *Commonwealth* v. *Ellerbe*, 430 Mass. 769, 775 (2000) (*Ellerbe*), quoting from *Commonwealth* v. *Dunn*, 34 Mass. App. Ct. 702, 704 (1993) (*Dunn*). See *Commonwealth* v. *Daley*, 423 Mass. 747, 750 (1996) ("The impoundment of a vehicle for noninvestigatory reasons is generally justified if supported by public safety concerns or by the danger of theft or vandalism to a vehicle left unattended").

The defendants argue that *Commonwealth* v. *Brinson*, 440 Mass. 609, 614 (2003) (*Brinson*), means that the police officers' testimony about the car being parked in a high-crime area is not sufficient to support a conclusion that there is an adequate risk of theft or vandalism without more specific information about the vulnerability of cars parked there to theft or vandalism. In *Brinson*, the Supreme Judicial Court dealt with circumstances where the police did not direct the driver to stop the car, but instead sought to impound a car that an arrestee had, prior to his arrest, lawfully parked at a distant location in a commercial parking lot that "was open to the public without limitation." *Ibid.* "There were no parking restrictions from which it could be determined that the car had been illegally parked, and there had been no request by the lot owner to tow the car." *Id.* at 614-615. The court first explained that, in the absence of a request from a property owner or manager to have the car removed, seizure "is inappropriate, at least when the offense for which the arrest is made is so minor that the defendant's prompt release can be anticipated." *Id.* at 613, quoting from 3 LaFave, Search and Seizure § 7.3(c), at 521 (3d ed. 1996). The court then examined whether there was any reason not to adhere to that ordinary rule,

motion judge erred in concluding that the initial stop of the motor vehicle was justified.

noting that "[c]ourts have upheld the impoundment of a car from the lot associated with the arrest location when accompanied by such circumstances as threats of vandalism, parking restrictions, police liability concerns, or the inability of the defendant or another later to move the car." *Brinson, supra* at 613. The court determined that "the record contains no evidence of threat of vandalism to justify impoundment." *Id.* at 614. Despite "testimony that the commercial lot was a common drug traffic area, there was no evidence that the police had specific knowledge that unattended cars would be especially vulnerable to theft or vandalism." *Ibid.*[3]

The *Brinson* decision did not alter the long-standing rule that impoundment of a car pulled over may be justified by specific evidence of a danger that the car left unattended might be vandalized or stolen when that danger is combined with a need to protect the police from false claims of loss. *Ellerbe, supra* at 775. *Brinson,* which applied that rule, demonstrates that whether the specific evidence of a risk of theft or vandalism is sufficient to render an impoundment reasonable and therefore permissible under the Fourth Amendment to the United States Constitution is something that must be determined on a case-by-case basis in light of all the facts and circumstances. See *Brinson, supra* at 614 (relying on *Ellerbe, supra,* and distinguishing *Ellerbe, supra,* and *Dunn, supra,* on their facts).

In this case, there was specific evidence available to the officers at the time of their decision pointing to a danger of theft or vandalism if the vehicle were left unattended. The vehicle was parked at the side of the road in a location dictated not by driver choice but by the circumstances of the stop. The location of the stop was a "high-crime" area. The driver, Eddington, had a suspended driver's license; even if he were to have been released promptly, he would not have been able to move the car. The vehicle was owned by a third party, unknown to the officers, who

---

[3]In *Brinson, supra* at 615 n.6, there was "a considerable distance between the place of the arrest and the location of the parked car," which location was known to the police only because of their prearrest surveillance of the defendant. In light of the court's conclusion that none of the circumstances was present that might otherwise have justified the impoundment, the court did not address whether the arrest could serve as the basis for the impoundment given the distance between the arrest and the car. *Ibid.*

was not present at the scene, and no one else at the scene was authorized to drive or move the vehicle. Cf. *Commonwealth* v. *Caceres*, 413 Mass. 749, 752 & n.3 (1992). Given the hour, it was impractical to contact the owner, and the police therefore were not constitutionally required to do so. See *Commonwealth* v. *Henley*, 63 Mass. App. Ct. 1, 5-6 (2005). Absent impoundment, the car thus would have been left unattended on a public street in a high-crime area for an indefinite period of time.

This evidence demonstrates a sufficient risk that the car might be vandalized or stolen so that, when combined with the risk of false claims for loss against the police, the impoundment of the car, pursuant to a constitutionally adequate police policy, was reasonable and thus permissible under the Fourth Amendment.[4] See *United States* v. *Ramos-Morales*, 981 F.2d 625, 626-627 (1st Cir. 1992) (Breyer, J.), cert. denied, 508 U.S. 926 (1993) (finding impoundment permissible where car parked legally on residential street that agents reasonably thought not to be in the defendant's neighborhood). See also *United States* v. *Staller*, 616 F.2d 1284, 1290 (5th Cir.), cert. denied, 449 U.S. 869 (1980), cited with approval in *Ellerbe*, 430 Mass. at 775 (impoundment reasonable where car was lawfully parked in a mall parking lot because "the officers were aware that a car parked overnight in a mall parking lot runs an appreciable risk of vandalism or theft. The likelihood of such harm would increase with every passing day"); *United States* v. *Kornegay*, 885 F.2d 713, 716 (10th Cir. 1989), cert. denied, 495 U.S. 935 (1990), cited with approval in *Brinson*, 440 Mass. at 613 (finding impoundment of a car lawfully parked in a parking lot reasonable despite the absence of a request for removal from the lot owner where the public nature of the vehicle's location created potential for vandalism, the driver would not return soon, and no one at the scene of arrest was available to take custody of the vehicle).[5]

---

[4]Impoundments are permissible only under "standardized criteria." See *Colorado* v. *Bertine*, 479 U.S. 367, 375-376 (1987). See also *Commonwealth* v. *Alvarado*, 420 Mass. 542, 553 (1995) ("inventory searches of automobiles must be conducted pursuant to standard police procedures, and . . . those procedures must be in writing"). The defendants do not contend that there was an absence of a constitutionally adequate policy in this case, or that the police policy inadequately constrained police discretion. Cf. *Commonwealth* v. *Daley*, 423 Mass. at 751.

[5]The Supreme Judicial Court routinely cites Federal caselaw in its decisions

The motion to suppress in this case should have been denied.[6]

*So ordered.*

---

concerning vehicle impoundment and has not suggested that the test for the propriety of such impoundments under the Massachusetts Constitution and Declaration of Rights is any stricter than that under the Federal Constitution. Cf., e.g., *Ellerbe*, 430 Mass. at 773 & n.8 (noting differences in the scope of protection provided by the Fourth Amendment and art. 14 of the Massachusetts Declaration of Rights).

[6]Although the motion judge took notice of certain facts not in the record about the location in which the stop occurred, his decision did not depend upon them. Because, even if we accept these facts as true, they do not change our conclusion, we need not address the Commonwealth's argument that those facts were not proper for judicial notice.