# United States Court of Appeals
## For the First Circuit

No. 09-1906

UNITED STATES OF AMERICA,

Appellee,

v.

RUBEN SANCHEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nancy Gertner, U.S. District Judge]

Before

Lynch, Chief Judge,
Souter,* Associate Justice,
and Selya, Circuit Judge.

Jonathan Shapiro, Alexandra Deal, and Stern, Shapiro, Weissberg & Garin, LLP on brief for appellant.
Kelly Begg Lawrence, Assistant United States Attorney, and Carmen M. Ortiz, United States Attorney, on brief for appellee.

July 9, 2010

* Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**SELYA**, <u>Circuit Judge</u>.  This appeal proves the venerable adage that the shortest distance between two points is a straight line.  Although the appeal potentially presents a variety of issues, it is most easily resolved by resort to an elementary principle of constitutional law: the plain view exception to the warrant requirement of the Fourth Amendment.  The tale follows.

Before us, defendant-appellant Ruben Sanchez challenges an order denying his motion to suppress evidence — a gun and ammunition — seized during an inventory search of a motorcycle impounded by the police.  Setting to one side more exotic theories, we apply the plain view doctrine, which affords a solid basis for the refusal to suppress.  Accordingly, we affirm the challenged order.

The facts are largely undisputed and, to the extent that the district court has engaged in interstitial factfinding to fill gaps or resolve conflicts, its findings are not clearly erroneous.

The critical events occurred in Melrose, Massachusetts, on September 22, 2006.  At that time, two municipal police officers were separately patronizing a local restaurant (one had stopped for a take-out order; the other had stopped to eat).  Spotting each other, the officers chatted inside the restaurant.  As they conversed, a motorcycle pulled into the restaurant's parking lot.  The operator entered the restaurant and began speaking with a female customer.

A few hours before, one of the officers, Roy, had perused a photographic printout prepared in connection with an arrest warrant issued the previous day for one "Ruben Sanchez." Roy told his fellow officer, Slaney, that the motorcyclist looked like Sanchez. Roy further related that the warrant had issued following an allegation of domestic violence by Sanchez's girlfriend.

Slaney left the restaurant and went to his police cruiser, which was parked nearby. Using the car's computer, he ran the motorcycle's license plate number through a data bank maintained by the Registry of Motor Vehicles (RMV).[1]

After Slaney obtained the information, he informed Roy that the license plate and the motorcycle did not fit together. The plate had been issued for a 1976 Honda motorcycle. The motorcycle in the parking lot was not a 1976 Honda, but a 2002 Harley-Davidson. In addition, the registration of the 1976 Honda had been revoked for failure of the owner (a man other than Sanchez) to maintain compulsory insurance. See Mass. Gen. Laws ch. 90, § 34H.

The officers, having reasonably (and, as matters turned out, correctly) concluded that Ruben Sanchez and the appellant were

---

[1] This initial check of a plainly visible license plate number through public records is not itself a search within the contemplation of the Fourth Amendment because there is no reasonable expectation of privacy in such a number. See United States v. Diaz-Castaneda, 494 F.3d 1146, 1150 (9th Cir. 2007) (collecting cases).

one and the same, waited in the parking lot. They planned to arrest the appellant on the outstanding warrant when he emerged from the restaurant. During this interlude, Roy called the officer who had investigated the domestic violence complaint. That officer furnished a description of the complainant that matched the woman whom the appellant had encountered inside the restaurant.

Moments later, the appellant and the woman repaired to the parking lot. They were talking with each other. Roy and Slaney approached, calling the woman's name. When she acknowledged her identity, the officers asked the appellant if he was Ruben Sanchez. He responded affirmatively, and the officers arrested him pursuant to the outstanding warrant.

After effecting the arrest, the officers decided to impound the motorcycle. In accordance with standard Melrose police procedure, Roy called the officer in charge for permission to impound and tow the motorcycle. He subsequently testified that he chose this course of action because "the wrong plate was on [the motorcycle]" and "it wasn't legally there" because it was neither properly registered nor insured as it should have been "to be in that parking lot."

The district court credited this account. United States v. Sanchez, 535 F. Supp. 2d 216, 224 (D. Mass. 2008). Roy's actions at the time further confirm the account: he issued a citation to the appellant for the violations that he had described.

See Mass. Gen. Laws ch. 90, § 9 (operating with invalid registration); id. § 23 (attaching false license plate with intent to conceal vehicle's identity); id. § 34J (operating without insurance).

Roy received permission from his superior to impound and tow the motorcycle. Following standard practice, he performed an inventory search incident to the impoundment before the tow truck arrived. He discovered a loaded handgun in an unlocked saddlebag at the rear of the motorcycle.

We fast-forward to the prosecution that undergirds this appeal. The seized firearm eventually formed the basis for federal felon-in-possession charges. See 18 U.S.C. § 922(g)(1), (8). The appellant initially maintained his innocence and moved to suppress, among other things, the handgun and ammunition. The district court held a two-day evidentiary hearing and, ruling ore tenus, denied the motion. The court subsequently issued a rescript in which it explained that the officers' decision to impound the motorcycle was a reasonable exercise of their community caretaking function.[2] Sanchez, 535 F. Supp. 2d at 219-21. Impoundment was, therefore,

---

[2] The community caretaking exception to the Fourth Amendment's warrant requirement allows the police to impound a vehicle for noninvestigatory purposes when it is reasonable to do so (say, to remove an impediment to traffic or to protect a vehicle from theft or vandalism). See, e.g., Cady v. Dombrowski, 413 U.S. 433, 441 (1973); United States v. Coccia, 446 F.3d 233, 238 (1st Cir. 2006); United States v. Rodríguez-Morales, 929 F.2d 780, 784-86 (1st Cir. 1991).

lawful despite the absence of a search warrant. Id. Relatedly, the police department's written inventory protocol, id. at 220, gave the officers effective guidance in making the decision to impound and tow. Id. at 220-22. Finally, the court found that the towing of the motorcycle was not barred under state law. Id. at 222-24.

With the prospect of a trial looming, the appellant entered a conditional guilty plea, reserving his right to seek appellate review of the suppression issue. See Fed. R. Crim. P. 11(a)(2). The district court sentenced him to a 180-month incarcerative term, to be followed by five years of supervised release. This timely appeal ensued.

In reviewing a trial court's denial of a motion to suppress, we accept the court's factual findings to the extent that they are not clearly erroneous. United States v. Chhien, 266 F.3d 1, 5 (1st Cir. 2001). We review its legal conclusions de novo. Id.

This appeal is narrow in its scope: neither the arrest nor the inventory search procedure itself is challenged. Rather, the appellant challenges only the seizure of the motorcycle, arguing that the police impounded it in derogation of his Fourth Amendment rights. Accordingly, his thesis runs, the objects seized in the ensuing inventory search are subject to suppression as

fruit of a poisonous tree.  See Wong Sun v. United States, 371 U.S. 471, 484-85 (1963).

Mindful that a decision to impound is analytically distinct from a decision to undertake an inventory search incident to a lawful impoundment, United States v. Duquay, 93 F.3d 346, 351 (7th Cir. 1996), our task is to determine whether the impoundment itself offended the Fourth Amendment.  In carrying out this task, we are not bound by the lower court's rationale but, rather, may affirm its order on any alternate basis made manifest by the record.  Chhien, 266 F.3d at 7 n.4.  We avail ourselves of this flexibility here.

It is common ground that the Fourth Amendment forbids "unreasonable searches and seizures."  U.S. Const. amend. IV. Although this ordinarily means that a seizure of property by a police officer requires a warrant, exceptions exist.  One of these exceptions is for items in plain view.  See, e.g., Horton v. California, 496 U.S. 128, 136-37 (1990); Vega-Rodríguez v. P.R. Tel. Co., 110 F.3d 174, 181 (1st Cir. 1997).  Although the district court eschewed reliance on the plain view doctrine in favor of a different rationale, we think that this doctrine offers the simplest basis on which to resolve this appeal.

The desirability of this approach is enhanced by the fact that no further factual findings are needed to invoke this doctrine.  The only pertinent question is whether, on an objective

view of the record, the impoundment (a form of seizure) was premised on evidence lawfully discovered and seized while in plain view. See United States v. Hadfield, 918 F.2d 987, 993 (1st Cir. 1990).

A warrantless seizure is lawful under the plain view doctrine as long as (I) the police officer who effects the seizure lawfully reaches the vantage point from which he sees an object in plain view; (ii) probable cause exists to support his seizure of that object; and (iii) he has a right of access to the object itself. United States v. Allen, 573 F.3d 42, 51 (1st Cir. 2009); United States v. Antrim, 389 F.3d 276, 283 (1st Cir. 2004).

It is beyond serious question that the first element of this test is satisfied here. The officers were in a parking lot where they had a right to be, and both the motorcycle and its license plate were easily visible to the naked eye. Thus, the officers had lawfully reached the position from which they saw the objects that they subsequently seized.

The second element of the test concerns whether probable cause existed for the seizure, not whether probable cause existed for the arrest. As the district court explained, the objects seized were not evidence of the crime for which the appellant was arrested. Sanchez, 535 F. Supp. 2d at 224. Thus, for purposes of the plain view doctrine, the relevant question is whether the

officers had probable cause to believe that the seized objects were evidence of some other crime.

As a general matter, probable cause exists when the police have (I) reliable information that a crime has been committed and (ii) sufficient reason to believe that they have come across evidence of it. See United States v. Jones, 187 F.3d 210, 220 (1st Cir. 1999) (quoting Texas v. Brown, 460 U.S. 730, 742 (1983)). In the "plain view" context, this means that probable cause exists when the incriminating character of an object is immediately apparent to the police. United States v. Hamie, 165 F.3d 80, 83 (1st Cir. 1999); see also Coolidge v. New Hampshire, 403 U.S. 443, 466 (1971) (plurality op.). Probable cause is determined under an objective standard. Illinois v. Gates, 462 U.S. 213, 230-31 (1983); United States v. Figueroa, 818 F.2d 1020, 1023 (1st Cir. 1987). The seizing officers' conclusion, taking into account the totality of the circumstances, need not be certain, but it must be based on no less than a "fair probability." United States v. Sokolow, 490 U.S. 1, 7 (1989); Hamie, 165 F.3d at 83.

Here — prior to the seizure — Slaney had checked with the RMV and discovered that the motorcycle was being operated with a bogus license plate (that is, a revoked plate that corresponded to a motorcycle of a different make, model, and year). By then, he also had a solid basis for believing that the motorcycle had been

parked where it was by the appellant, who was not the registered owner of the motorcycle corresponding to the license plate number.

Under Massachusetts law, attaching a false license plate to a motor vehicle with the intent to conceal the vehicle's identity is a crime. See Mass. Gen. Laws ch. 90, § 23. Similarly (with exceptions not pertinent here), operating a motor vehicle without proper license plates is a crime. See id. § 9. Prosecuting a case under either statute requires proof of both the existence of the vehicle and the manner of its (unauthorized) registration.

Given the discrepancies between the license plate affixed to the appellant's motorcycle and the registration information gleaned from Slaney's computer check of the RMV files, it was immediately apparent to the officers that one or both of these offenses had been committed.[3] The vehicle, with the plate attached, was the best evidence of the licensing infractions. The police, therefore, had probable cause to believe both that crimes had been committed and that the motorcycle and license plate constituted evidence of those crimes. Seizure would preserve this evidence. See, e.g., Virginia v. Moore, 553 U.S. 164, 171 (2008); Whren v. United States, 517 U.S. 806, 817-18 (1996); see also 3 Wayne R. LaFave, Search and Seizure § 7.3, at 147 (4th ed. Supp.

---

[3] Indeed, the appellant concedes that he perpetrated at least one of these crimes. See Appellant's Br. at 11 (conceding violation of Mass. Gen. Laws ch. 90, § 23).

2009-2010) (citing authority for the proposition "that impoundment is permissible whenever the vehicle is parked in violation of traffic regulations, even those having to do with identification tags"). Consequently, the second element of the plain view test is satisfied.

Before leaving our discussion of probable cause, we lay to rest two straw men. First, the appellant maintains that, at best, the police used the licensing violations as a subterfuge to allow a broader investigation into the domestic violence charge. This argument is impuissant.

When, as in this case, a seizure of items in plain view is supported by probable cause, an inquiring court will not look behind that justification. See Whren, 517 U.S. at 813, 817-18; see also United States v. Baker, 50 F. App'x 237, 238-39 (6th Cir. 2002). Put another way, determining the existence vel non of probable cause requires a court to look at the objective facts, not at the actors' subjective intent.[4] See Hadfield, 918 F.2d at 993 (explaining that "an officer's state of mind or subjective intent in conducting a search is inapposite as long as the circumstances,

---

[4] Although subjective intent is not the issue, we note for the sake of completeness that the district court, as a matter of fact, rejected the premise that the officers were engaging in a charade. Sanchez, 535 F. Supp. 2d at 224. These factual findings are not clearly erroneous and, if material, would demand our deference. See United States v. Ruidiaz, 529 F.3d 25, 28, 32 (1st Cir. 2008).

viewed objectively, justify the action taken"); see also Whren, 517 U.S. at 813.

Second, the appellant asserts that the relevant question under Massachusetts law is whether the motorcycle was impeding traffic or posing a hazard. Appellant's Br. at 12 n.5 (citing South Dakota v. Opperman, 428 U.S. 364, 369 (1976); Commonwealth v. Brinson, 800 N.E.2d 1032, 1036 (Mass. 2003)). In support of this assertion, he notes that the motorcycle was in a private lot and did not provoke any such concerns. But those facts are irrelevant where, as here, seizure is justified under the plain view doctrine.

This brings us to the third, and last, element of the plain view test. For aught that appears, the officers in this case had a lawful right to seize the motorcycle where it stood. No more is exigible to satisfy the third element. Horton, 496 U.S. at 137 & n.7; Jones, 187 F.3d at 221 n.10.

In an effort to blunt the force of this reasoning, the appellant asseverates that Massachusetts law prohibited the police from removing the motorcycle from a private parking lot without a request to that effect from the lot's owner. See Mass. Gen. Laws ch. 266, § 120D. The implication is that because there was no such request here, the seizure fails the third element of the plain view test. We reject that implication.

The third element of the plain view test asks, in effect, whether the police had to commit a trespass in order to gain access

-12-

to an object in plain view.  See Horton, 496 U.S. at 137 & n.7; Jones, 187 F.3d at 221 n.10.  Here, the officers were lawfully in the parking lot and could access the motorcycle without trespassing.

Of course, it can be argued that state law made removing the motorcycle from the parking lot akin to a trespass to a chattel.  Under the third prong of the plan view test, it is unclear whether this sort of intrusion is a relevant consideration. See, e.g., Horton, 496 U.S. at 137 & n.7.

We need not probe this point, however, because the district court correctly held that state law did not impose a prohibition on removal of the motorcycle in the circumstances of this case.  See Sanchez, 535 F. Supp. 2d at 223-24 (stating that the "ongoing violation" of a criminal statute is a circumstance that overrides any state law limits on seizing a vehicle from a private lot). The Massachusetts courts appear to condone the impoundment of uninsured, unregistered vehicles as a general matter.  See, e.g., Commonwealth v. Daley, 672 N.E.2d 101, 103 (Mass. 1996); Commonwealth v. Horton, 827 N.E.2d 1257, 1263 n.4 (Mass. App. Ct. 2005); see also Brinson, 800 N.E.2d at 1036 (concluding that "[a]ttendant circumstances" may justify an impoundment from a private lot).

To recapitulate, the officers had probable cause to believe that crimes in the nature of licensing violations had

occurred.  The motorcycle and its bogus license plate were in plain view and were evidence of those crimes.  The officers decided to seize them.  They did not need a warrant to do so.  The ensuing inventory search, which uncovered the loaded handgun, is not independently challenged.  There is, therefore, no constitutional insult.

We need go no further.  The district court did not err in denying the motion to suppress.

**Affirmed**.

— **Separate Opinion Follows** —

**LYNCH, <u>Chief Judge</u>, concurring.** The question presented in this case is whether the police could impound Sanchez's motorcycle without a warrant after learning that the motorcycle violated several Massachusetts laws, could not lawfully be driven, and likely would be left unattended for days because of Sanchez's arrest. Sanchez concedes that if the impoundment was lawful, the subsequent inventory search was also lawful. The parties and the district court understood this case to turn on the community-caretaker exception to the Fourth Amendment's prohibition on warrantless searches. Because that theory justified the seizure, I would affirm on that basis.

Courts have regularly upheld warrantless vehicle impoundments when police are acting not as investigators but as community caretakers, responsible for protecting public safety and preventing hazards by removing vehicles that impede traffic, risk vandalism, or create inconvenience. <u>See</u> <u>South Dakota</u> v. <u>Opperman</u>, 428 U.S. 364, 368-69 (1976); <u>United States</u> v. <u>Coccia</u>, 446 F.3d 233, 237-39 (1st Cir. 2006); <u>United States</u> v. <u>Ramos-Morales</u>, 981 F.2d 625, 626 (1st Cir. 1992). Courts sustain these impoundments as long as the police acted reasonably under the circumstances, for instance because state laws or standard police procedures authorized the impoundment for noninvestigatory reasons. <u>See</u> <u>Coccia</u>, 446 F.3d at 238-39; <u>United States</u> v. <u>Rodriguez-Morales</u>, 929 F.2d 780, 785 (1st Cir. 1991).

-15-

Sanchez claims the community-caretaker exception does not apply because neither state law nor local police procedures provided adequate standards justifying impoundment on these facts. Further, he argues, the police did not need to remove his motorcycle to protect public safety or prevent vandalism because the motorcycle was in a private lot and Sanchez could have arranged to have it moved himself. Both arguments plainly fail.

Before the seizure, the police had learned, through a computer check of the license plate, that Sanchez was driving an uninsured motorcycle to which the affixed licensed plates did not belong and that his motorcycle failed to display an appropriate license plate and registration number. It was likely, and indeed Sanchez concedes, that he unlawfully attached a different plate to his motorcycle "with intent to conceal the identity" of the vehicle, a violation of Massachusetts General Law ch. 90, § 23. Massachusetts also prohibits driving an uninsured or improperly registered vehicle on the roadway. Id. § 9; id. § 34J.

Massachusetts law sets clear, specific criteria authorizing impoundment under these circumstances. Because police cannot permit people to continue to operate unlawful and potentially dangerous uninsured, unregistered vehicles with attached plates belonging to another vehicle on the roads, police presumptively can impound the vehicles. See Commonwealth v. Daley, 672 N.E.2d 101, 103 (Mass. 1996); Commonwealth v. Horton, 827

N.E.2d 1257, 1263 n.4 (Mass. App. Ct. 2005). Relying on state law, local police regularly impound vehicles under those circumstances. The officers in this case consulted their superior, who approved the seizure, confirming that Sanchez's motorcycle fell into this category. Their decision to impound his vehicle was a reasonable choice. These facts alone would meet the community-caretaker exception.

Further facts only reinforce the reasonableness of the officers' impoundment decision. The fact that Sanchez's motorcycle was parked in a private lot, not blocking traffic on a public road or parked in the middle of a high-crime area, does not show that its impoundment had nothing to do with protecting public safety, preventing vandalism, or promoting public convenience. See Ramos-Morales, 981 F.2d at 626-27. Sanchez parked his motorcycle in a restaurant lot intended only for short-term diners. The officers knew that neither Sanchez nor anyone else could lawfully drive the vehicle without a proper license plate and registration and that state law prohibited Sanchez from having the motorcycle towed himself. Mass. Gen. Laws ch. 90, § 9. Sanchez was under arrest; given his criminal history, the officers knew he would not likely be released soon and the motorcycle would be left unattended in the meantime. On these facts, the police reasonably acted as community caretakers when impounding the motorcycle. I agree that the proper outcome is an affirmance.